UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
COREY LEACH and ANTHONY JACOB, individually
and on behalf of all others similarly situated,

                       Plaintiffs,

                -against-

NBC UNIVERSAL TELEVISION GROUP;
SONY PICTURES; CENTRAL CASTING SERVICES;
DAVIS ENTERTAINMENT; WOODRIDGE
PRODUCTIONS, INC.; and ENTERTAINMENT PARTNERS,

                     Defendants.
------------------------------------------------------------------------X

**COLLECTIVE AND CLASS
ACTION COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

Plaintiffs, COREY LEACH ("Leach") and ANTHONY JACOB ("Jacob") on behalf of themselves and all others similarly situated, by and through their attorneys, VALLI KANE & VAGNINI, LLP, bring this action for damages and other legal and equitable relief from the Defendants, NBC UNIVERSAL TELEVISION GROUP; SONY PICTURES; CENTRAL CASTING SERVICES; DAVIS ENTERTAINMENT; WOODRIDGE PRODUCTIONS, INC.; and ENTERTAINMENT PARTNERS ("Defendants") and allege as follows:

<u>**INTRODUCTION**</u>

1. Defendants are in charge of the funding, production and/or payroll of the television series "The Blacklist."

2.  Plaintiffs are Parking Production Assistants and they along with similarly situated current and former employees of Defendants, holding comparable positions are hourly employees who were improperly paid.

3.  This is a collective and class action brought by Plaintiffs challenging acts committed by Defendants against Plaintiffs and those similarly-situated for violations of Federal and State wage and hour laws.

4.  Defendants systematic failure and refusal to pay Plaintiffs and all other similarly situated employees for all hours over forty (40) in a workweek violates the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the New York State Labor Law §§650 *et seq.*, the Wage Theft Prevention Act § 195 ("NYLL"), and any other cause(s) of action that can be inferred from the facts set forth herein.

5.  Defendants committed violations of these laws by engaging in a systematic scheme of fraudulently altering Plaintiffs' and similarly-situated employees' paychecks in order to deprive them of their statutorily required overtime pay.

6.  Plaintiffs alleges on behalf of themselves and similarly situated current and former employees who elect to opt into this action pursuant to the FLSA that they are entitled to recover (i) unpaid or incorrectly paid wages for hours worked above 40 in a workweek, as required by law, (ii) unpaid overtime (iii) liquidated damages and (iv) attorney fees and costs pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*, and further relief as this Court finds necessary and proper.

7.  Plaintiffs brings this action, pursuant to the Fed. R. Civ. P. 23, on behalf of all persons who are and were employed by Defendants in the New York area as Parking Production Assistants and those similarly situated holding comparable positions in the past six years

through the final date of the disposition of this action who (i) were not paid for all hours worked by them as well as unpaid overtime wages for hours worked above 40 in a workweek, as required by the NYLL (ii) who were subjected to Defendant's willful failure to comply with the notice and record keeping requirements of NYLL§195(1) and 195(3) resulting in penalties under NYLL § 198(1)b and 198(1)d and who are entitled to recover (1) back pay, (2) unpaid overtime, (3) liquidated damages, (4) statutory damages for notice and recordkeeping violations, (5) attorney's fees and costs, and (6) interest, and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) under 29 U.S.C. § 201 et. seq.

9. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State in which the unlawful employment practices occurred.  Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

## PARTIES

11. Plaintiff Leach is a citizen of New York and resides in South Setauket, New York.

12. Plaintiff Jacob is a citizen of New York and resides in Brooklyn, New York.

13. Upon information and belief, Defendant NBC Universal Television Group, is located at 30 Rockefeller Plaza New York, New York 10112.  Defendant NBC Universal Television Group has a principal place of business within New York County, New York and transacted business in New York by employing Plaintiffs in New York City during the production of the television series "The Blacklist."

14. Upon information and belief, the amount of qualifying annual volume of business Defendant NBC Universal Television Group exceeds $500,000.00, and thus subjects Defendant NBC Universal Television Group to the FLSA's overtime requirements. Additionally, Defendant NBC Universal Television Group is engaged in interstate commerce as they all handle goods that have been moved in interstate commerce.  This independently subjects Defendant NBC Universal Television Group to the overtime requirements of the FLSA.

15. Upon information and belief, Defendant Sony Pictures, is located at 10202 W. Washington Boulevard, Culver City, California 90232.  Defendant Sony Pictures has a principal place of business within Los Angeles County, California and transacted business in New York

by employing Plaintiffs in New York City during the production of the television series "The Blacklist."

16. Upon information and belief, the amount of qualifying annual volume of business for Defendant Sony Pictures exceeds $500,000.00, and thus subjects Defendant Sony Pictures to the FLSA's overtime requirements. Additionally, Defendant Sony Pictures is engaged in interstate commerce as they all handle goods that have been moved in interstate commerce. This independently subjects Defendant Sony Pictures to the overtime requirements of the FLSA.

17. Upon information and belief, Defendant Central Casting is located at 220 S. Flower Street, Burbank, California 91502. Defendant Central Casting has a principal place of business within Los Angeles County, California and transacted business in New York by employing Plaintiffs in New York City during the production of the television series "The Blacklist."

18. Upon information and belief, the amount of qualifying annual volume of business for Defendant Central Casting exceeds $500,000.00, and thus subjects Defendant Central Casting to the FLSA's overtime requirements. Additionally, Defendant Central Casting is engaged in interstate commerce as they all handle goods that have been moved in interstate commerce. This independently subjects Defendant Central Casting to the overtime requirements of the FLSA.

19. Upon information and belief, Defendant Davis Entertainment, is located at 150 S. Barrington Place, Los Angeles, California 90049. Defendant Davis Entertainment has a principal place of business within Los Angeles County, California and transacted business in New York by employing Plaintiffs in New York City during the production of the television series "The Blacklist."

20. Upon information and belief, the amount of qualifying annual volume of business for Defendant Davis Entertainment exceeds $500,000.00, and thus subjects Defendant Davis Entertainment to the FLSA's overtime requirements.   Additionally, Defendant Davis Entertainment is engaged in interstate commerce as they all handle goods that have been moved in interstate commerce.   This independently subjects Defendant Davis Entertainment to the overtime requirements of the FLSA.

21. Upon information and belief, Defendant Woodridge Productions Inc., is located at 10202 Washington Boulevard, Culver City, California 90232.  Defendant Woodridge Productions Inc. has a principal place of business within Los Angeles County, California and has transacted business in New York by employing Plaintiffs in New York City during the production of the television series "The Blacklist."

22. Upon information and belief, the amount of qualifying annual volume of business for Defendant Woodridge Productions Inc. exceeds $500,000.00, and thus subjects Defendant Woodridge Productions Inc. to the FLSA's overtime requirements.   Additionally, Defendant Woodridge Productions Inc. is engaged in interstate commerce as they all handle goods that have been moved in interstate commerce.  This independently subjects Defendant Woodridge Productions Inc. to the overtime requirements of the FLSA.

23. Upon information and belief, Defendant Entertainment Partners ("Payroll Defendant") is located at 2835 North Naomi Street, Burbank, CA 91504.  Defendant Entertainment Partners transacted business by employing Plaintiffs in New York City during the production of the television series "The Blacklist."

24. Upon information and belief, the amount of qualifying annual volume of business for Defendant Entertainment Partners exceeds $500,000.00, and thus subjects Defendant

Entertainment Partners to the FLSA/s overtime requirements. Additionally, Defendant Entertainment Partners is engaged in interstate commerce as they all handle goods that have been moved in interstate commerce. This independently subjects Defendant Entertainment Partners to the overtime requirements of the FLSA.

25. At all relevant times, all of the Defendants jointly employed Plaintiffs and together formed a "single integrated enterprise."

## FLSA COLLECTIVE ACTION ALLEGATIONS

26. Plaintiffs bring the first claim for relief pursuant to 29 U.S.C. § 216(b) on their own behalves as well as all similarly situated persons who elect to opt into this action who work or have worked for Defendants as those in the following class:

> All Parking Production Assistants, or similarly titled employees, employed by Defendants during the production of "The Blacklist" in the New York area who worked in excess of forty (40) hours in a given work week during the FLSA statutory period ("FLSA Plaintiffs").

27. At all relevant times, Plaintiffs are similarly situated to all such individuals in the FLSA Class because while employed by Defendants, they and the members of the FLSA Class performed similar tasks, were subject to the same laws and regulations, were paid in the same or similar manner, were paid the same or similar rate, were required to work in excess of forty (40) hours per work-week, and were not paid the required one and a half (1 ½) times their respective regular rates of pay for overtime worked.

28. Upon information and belief, Defendants treated all FLSA Plaintiffs similarly in requiring them to work in excess of forty (40) hours per work week without adequate overtime compensation. Plaintiffs and FLSA Plaintiffs work and/or worked for Defendants at

various production sites throughout the New York City area four (4) to six (6) days per week for an average total ranging from fifty (50) to ninety (90) hours per week, if not more. They were regularly and specifically scheduled to work more than forty (40) hours per work week, yet Defendants did not pay them the statutorily required overtime compensation.  This practice was enforced against all employees in a similar or identical fashion.

29. Defendants are liable under the FLSA for, inter alia, failing to properly compensate the FLSA Plaintiffs. There are believed to be other FLSA Collective Action Members who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. Notice should be sent to the FLSA Class pursuant to 29 U.S.C. § 216(b).

30. As exemplified by their fraudulently prepared payroll records, Defendants are and have been aware of the requirement to pay Plaintiffs and FLSA Plaintiffs an overtime rate for their hours in excess of forty (40) per work week. However, Defendants have purposefully elected to force Plaintiffs and the FLSA Plaintiffs to work off-the-clock hours by unilaterally reducing their reported hours of work each work week.

## RULE 23 CLASS ALLEGATIONS

31. Plaintiffs additionally seek to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), on their own behalf as well as those who are similarly situated, who, during the previous six years, were subjected to violations of the New York Labor Law.

32. The Class which Plaintiffs seek to define includes:

All Parking Production Assistants, or similarly titled employees, employed by Defendants during the production of "The Blacklist" in the New York area who worked in excess of forty (40) hours in a given work week during the NYLL Labor Law statutory period ("New York Class Plaintiffs").

33. The persons in the New York Class identified above are so numerous that joinder of all members is impracticable. Although Plaintiffs do not know the precise number of such persons, the facts on which the calculation of that number are readily ascertainable since the identity, addresses, time records, work schedules, positions and rates of pay for each Class Member are determinable from Defendants' records. Notice can be provided pursuant to FRCP 23.

34. Upon information and belief, during the previous six (6) years, Defendants have, in total, employed well in excess of 40 employees in order to staff their filming locations throughout the State of New York.

35. There are questions of law and/or fact common to the New York Class that predominate over any questions solely affecting individual members of the New York Class, including but not limited to the following:

    a.   whether New York Class Plaintiffs were scheduled to work and/or required to work shifts of approximately twelve (12) hours, spanning three (3) to six (6) consecutive days per week;

    b.   whether New York Class Plaintiffs were properly compensated for overtime pay pursuant to Defendants' policies;

    c.   whether Defendants failed to properly pay New York Class Plaintiffs for the hours worked in excess of forty (40) hours;

d.  whether Defendants had a uniform policy and practice of paying a flat shift-rate of pay, including for overtime hours Defendants acknowledged Plaintiffs and the New York Class worked;

e.  whether Defendants reduced New York Class Plaintiffs' actual hours worked each pay period in an effort to circumvent overtime pay requirements;

f.  whether Defendants kept accurate records of hours worked by New York Class Plaintiffs; and,

g.  whether Defendants have any affirmative defenses for any of these claims.

36. The claims of the New York Class Representatives are typical of the claims of the New York Class sought to be represented. The Plaintiffs and the other New York Class Members are or were employed by Defendants and have been subjected to their policy, pattern or practice of failing to pay overtime or proper overtime wages for hours worked in excess of 40 hours per week.

37. Defendants employed Plaintiff Leach and Plaintiff Jacob in the same capacity as all of Defendants' Parking Production Assistants.  All of Defendants' Parking Production Assistants were treated the same or similarly by management with respect to pay or lack thereof.  Thus, there are common questions of law and fact which are applicable to each and every one of Defendants' employees.

38. This treatment included, but was not limited to, failure to pay employees the proper overtime wages.

39. The New York Class Representatives will fairly and adequately represent and protect the interests of the New York Class.

40. The representative parties are not currently employed with Defendants.  Plaintiffs have kept substantial records from their time working for Defendants and would properly and adequately represent the current and former employees who have been subjected to the treatment alleged herein.  Additionally, Plaintiffs' attorneys have substantial experience in this field of law.

41. A class action is superior to other available methods for the fair and efficient adjudication of the NYLL claims, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a company.   Class treatment of the New York Class claims is superior because it will obviate the need for duplicative litigation that may result in inconsistent judgments about Defendants' practices.  Plaintiff has no facts relating to the class claims that are atypical from those of the class.  Indeed, upon information and belief, Plaintiff was treated identically to other employees.

42. Indeed, because Plaintiffs are no longer employed by Defendants, they will be able to further represent New York Class Plaintiffs by acting without fear of further retaliation and harassment.

## STATEMENT OF THE FACTS

43. Defendants, NBC Universal Television Group, Sony Pictures, Central Casting Services, Davis Entertainment, and Woodridge Productions, Inc. (collectively referred herein as "Production Defendants") are in charge of the funding and production of the television series "The Blacklist."

44. Production Defendants are engaged in the practice of producing movies and television shows.  As part of such production, the Production Defendants hire Parking Production

Assistants to work on their various set locations in the New York area. Plaintiffs Leach and Jacob were two among other Parking Production Assistants that were repeatedly hired in the New York area during the production of "The Blacklist."

45. The Parking Production Assistants are hired to secure sets, lots, streets and various individuals on the production sites during the course of the television production. In order for the Parking Production Assistants to properly secure the production premises, they were required to work round the clock surveillance without any breaks.

46. At each filming location, the location manager, parking coordinator and accountant negotiated a flat rate of pay per shift based on what the Production Defendants desired.

47. The Production Defendants determine a rate of pay per shift applicable to Plaintiffs and negotiate with Defendant Entertainment Partners on the process of payment. Defendant Entertainment Partners then issue the checks to the Plaintiffs and FLSA Plaintiffs. Plaintiffs never had any influence or say over their rate of pay.

48. Defendants paid Plaintiffs and those similarly situated with a flat shift-rate of pay of $160.00 for each twelve (12) hour shift. This shift rate did not take overtime into account.

49. Although it is an "industry custom" to pay television and production employees by a flat shift pay, Defendants' practice of paying a flat shift-rate did not accurately compensate Plaintiffs for their overtime hours as required by the FLSA and New York Labor Law.

50. Although Defendants informed Plaintiffs that they were to be paid on a flat shift-rate at approximately $160.00 per shift, Defendants never accounted for overtime pay. Rather, Defendants unilaterally reduced the number of actual hours worked and recalculated a fictitious overtime rate which ultimately resulted in Plaintiffs receiving only the flat-rate.

51. As such, the reported hours worked on each of the paychecks were consistently fewer than what Plaintiffs actually worked during that pay period.

52. Upon information and belief, Production Defendants obtained the assistance of accountants and/or employees to calculate the precise number of regular, overtime and double time hours that were needed to be recorded on Plaintiffs' check so that the weekly gross earning would total a pre-determined budget allotment accounted for by Production Defendants.

53. Defendants' methodology of "backing out" the hours to meet a pre-determined weekly figure is unlawful, as it directly resulted in the Plaintiffs being improperly paid for their total hours worked.

54. In order to hide the fact that Plaintiffs were being paid less than statutorily required, Production Defendants falsely and incorrectly stated the numbers of hours worked on Plaintiffs' paychecks.  Production Defendants did not take into account the fact that Plaintiffs' shifts were twelve (12) hours in length when computing their hours worked per week.  This was all done on the Production Defendant's part as an effort to withhold from Plaintiffs their lawfully deserved compensation.

55. In effect, Production Defendants were continuously "shaving" hours that Plaintiffs worked each week, forcing the Parking Production Assistants to work "off-the-clock."

56. Upon information and belief, Plaintiffs and those similarly situated have been treated uniformly throughout their employment with Defendants at their various work locations.

57. At all times, Defendants controlled all terms and conditions of Plaintiffs' employment, including but not limited to their hours and rates of pay.

58. All Production Defendants were aware of their payroll practice and were consciously disregarding the requirements under the FLSA and New York Labor Law.

13

59. All Production Defendants were knowingly and willfully paying Plaintiff and those similarly situated a shift-rate rather than an hourly rate which deprived them of statutorily mandated overtime.

60. This falsification of payroll records further evidences Defendant's knowing and willful violation of the law.

### Plaintiff Corey Leach

61. Plaintiff Leach worked for each of the named Defendants from in or around November 2012 to October 2014.  Plaintiff Leach was hired as a Parking Production Assistant by each of the Production Defendants during this time.

62. Plaintiff Leach's work duties included arriving at the filming location 24 hours in advance of filming and securing the location.  Plaintiff Leach was required to keep the area clear of pedestrians and motorists by either placing cones or parking company vehicles in areas that would block both foot and vehicle traffic. Plaintiff Leach was also responsible to safeguard the production vehicles and equipment while they were on set.

63. Plaintiff Leach, throughout his tenure of employment, was a full-time employee of Defendants and was paid by check on a weekly basis.

64. Plaintiff Leach was informed he would be paid $160.00 per twelve (12) hour shift.  Plaintiff Leach was also informed that he would be responsible for determining how many shifts he desired to work per week.

65. Plaintiff Leach was assigned to work twelve (12) hour shifts, which began Sunday evening and concluded either late Friday evening or early Saturday morning.

66. Throughout Plaintiff Leach's entire tenure of employment with Defendants, Plaintiff Leach was required to work, and did in fact work, over forty (40) hours per week, in twelve (12)

hour shifts, in excess of sixty (60) hours per work week without proper overtime compensation.

67. At times, Plaintiff Leach worked for a full twenty-four (24) hour period, which was comprised of two shifts.

68. Plaintiff Leach was not given a break during or after each shift, even if he was required to work a double.

69. This amount of time that Plaintiff Leach was required to work correlated with Defendant's production and filming time.  Although these hours fluctuated per location, they required Plaintiff to be present at work in excess of forty (40) hours per week.

70. Plaintiff Leach was required to work during all hours in which Defendants were present on a location, including during inclement weather and when the set was shut down for any reason.

71. Plaintiff Leach was unable to leave the location for food and was not provided compensation for either lunch or dinner, although dinner is provided for other employees of the Production Defendants.

72. Plaintiff Leach was given limited access to the restrooms on the production sites. Plaintiff Leach was only provided restroom privileges when and if the production was in the midst of filming. Otherwise, Plaintiff Leach was forced to go to the bathroom in his car or pay local businesses in order to use their restroom facilities.

**Plaintiff Anthony Jacob**

73. Plaintiff Jacob worked for each of the named Defendants from in or around November 2012 to October 2014. Plaintiff Jacob was hired as a Parking Production Assistant by each of the Production Defendants during this time.

74. Plaintiff Jacob's work duties included arriving at the filming location 24 hours in advance of filming and securing the location. Plaintiff Jacob was required to keep the area clear of pedestrians and motorists by either placing cones or parking company vehicles in areas that would block both foot and vehicle traffic. Plaintiff Jacob was also responsible to safeguard the production vehicles and equipment while they were on set.

75. Plaintiff Jacob, throughout his tenure of employment, was a full-time employee of Defendants and was paid by check on a weekly basis.

76. Plaintiff Jacob was informed he would be paid $160.00 per twelve (12) hour shift. Plaintiff Jacob was also informed that he would be responsible for determining how many shifts he desired to work per week.

77. Plaintiff Jacob was assigned to work twelve (12) hour shifts, which began Sunday evening and concluded either late Friday evening or early Saturday morning.

78. At times, Plaintiff Jacob worked for a full twenty-four (24) hour period, which comprised of two shifts.

79. Plaintiff Jacob was not given a break during or after each shift, even if he was required to work a double.

80. This amount of time that Plaintiff Jacob was required to work correlated with Defendant's production and filming time. Although these hours fluctuated per location, they required Plaintiff to be present at work in excess of forty (40) hours per week.

81. Plaintiff Jacob was required to work during all hours in which Defendants were present on a location, including during inclement weather and when the set was shut down for any reason.

82. Plaintiff Jacob was unable to leave the location for food and was not provided compensation for either lunch or dinner, although dinner is provided for other employees of the Production Defendants.

83. Plaintiff Jacob was given limited access to the restrooms on the production site. Plaintiff Jacob was only provided restroom privileges when and if the production was in the midst of filming. Otherwise, Plaintiff Jacob was forced to go to the bathroom in his car or pay local businesses to use their restroom facilities.

## AND AS FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS ON BEHALF OF PLAINTIFFS AND ALL COLLECTIVE PLAINTIFFS

### For Violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219

84. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

85. Defendants required Plaintiffs and all Class Plaintiffs to work in excess of forty (40) hours a week while knowingly and willfully paying Plaintiffs and those similarly situated a shift-rate rather than an hourly rate, which deprived them of statutorily mandated overtime pay.

86. This practice was willful and lasted for the duration of the relevant time periods.

87. This practice is in violation of the Fair Labor Standards Act.

## AND AS FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS ON BEHALF OF PLAINTIFFS AND ALL CLASS PLAINTIFFS

### For Violation of the New York Labor Law §§ 650 et. seq.

88. Plaintiffs re-alleges and incorporates by reference all allegations in all preceding paragraphs.

89. Defendants required Plaintiffs and all Class Plaintiffs to work in excess of forty (40) hours a week while knowingly and willfully paying Plaintiffs and those similarly situated a shift-rate rather than an hourly rate, which deprived them of statutorily mandated overtime pay.

90. This practice lasted for the duration of the relevant time periods.

91. This practice is in violation of the New York Labor Law §§ 650 et. seq.


**AND AS FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS ON BEHALF OF PLAINTIFFS AND ALL CLASS PLAINTIFFS**

**For Violation of the New York Wage Theft Prevention Act § 195**

92. Plaintiffs realleges and incorporates by reference all the allegations in all preceding paragraphs.

93. The conduct alleged herein violates the New York State Labor Law as Defendants failed to provide Plaintiffs with notice, at the time of hiring and/or before February 1 of each subsequent year of Plaintiffs' employment, of their pay rate, regular day pay, the unit of measure for Plaintiffs' pay, deductions, allowances and net wages in violation of New York Labor Law §195.

94. Defendants also failed to provide Plaintiffs with a statement with every payment of wages in violation of New York Labor Law §195(1)(a).

95. Defendants' conduct was willful and lasted for the duration of the relevant time periods.

96. Defendants' conduct was the proximate and direct cause of the injuries that Plaintiffs have sustained herein.

97. This practice is in violation of the § 195 of the New York Wage Theft Prevention Act § 195.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all FLSA and New York Class Plaintiffs, demand judgment against Defendants as follows:

98. At the earliest possible time, Plaintiffs should be allowed to give notice of this collective action, or the Court should issue such notice, to all Collective Action Members.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime wages;

99. Designation of Plaintiffs as representatives of the FLSA Collective and Rule 23 Class, and Plaintiff's counsel as Class Counsel;

100. Equitable tolling of the FLSA statute of limitations as a result of the Defendants failure to post requisite notices under the FLSA;

101. Certification of this action as a class action pursuant to FRCP Rule 23 for the purposes of the claims brought on behalf of New York Class members under New York Labor Law and the New York Department of Labor Regulations;

102. Penalties under NYLL §§ 198(1)(b) and 198(1)(d) for the Defendants' failure to comply with the notice and record-keeping requirements of NYLL §§ 195(1) and 195(3);

103. Demand a jury trial on these issues to determine liability and damages;

104. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert

with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

105. A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, ("FLSA"), the New York Labor Law, §§ 650 et. seq. and the Wage Theft Prevention Act, § 195 of the New York Labor Law as amended in April 2011;

106. All damages which Plaintiffs and the FLSA and New York Class Plaintiffs have sustained as a result of Defendants' conduct, including back pay, liquidated damages, front pay, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

107. An award to the Plaintiffs and FLSA and New York Class Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

108. An award to the Plaintiffs, the FLSA Class Plaintiffs and New York Class Plaintiffs representing Defendants' share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

109. An award to the Plaintiffs and FLSA and New York Class Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties subject to proof;

110. Awarding Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

111. Pre-judgment and post-judgment interest, as provided by law; and

112. Granting Plaintiffs and FLSA and New York Class Plaintiffs other and further relief as this Court finds necessary and proper.

Dated: September 22, 2015
        Garden City, New York

Respectfully Submitted,

VALLI KANE & VAGNINI, LLP
600 Old Country Road, Suite 519
Garden City, New York 11530
516-203-7180

_____
James Vagnini (JV-2163)